CITY OF PLAINFIELD, PROSECUTOR, v. STATE BOARD OF TAX APPEALS AND CHARLES T. ELLIOTT, RESPONDENTS.

Submitted October 1, 1940—Decided May 6, 1941.

Before Justices CASE, DONGES and HEHER.

For the prosecutor, *William Newcorn.*

For the respondents, *Charles A. Reid, Jr.,* and *William P. Elliott.*

The opinion of the court was delivered by

CASE, J.   The writ of *certiorari* brings up a judgment of the State Board of Tax Appeals reducing the assessment for taxes levied for the year 1939 for the City of Plainfield against the property belonging to Charles T. Elliott at 774-784 Belvidere avenue.   The assessment on land was $8,500 and on improvements $6,100, making a total assessment of $14,600. On appeal by the owner the County Board of Taxation affirmed the assessment on land at $8,500 and reduced the assessment on improvements to $5,000, total $13,500.   The State Board of Tax Appeals, on the petition of the owner, reduced the assessment on land to $6,500, the assessment on improvements to $4,000, total $10,500.

The respondent owner rests his case upon the fact that the property was purchased by him on September 17th, 1938, for the price of $10,500 at private sale under contract from one Kathleen Locke.   The disposition of a property at private sale under contract at a certain price does not conclusively establish that price as the fair value of the property.   If a purchaser buys a property in which he is not particularly interested, and simply because he is attracted by the price, that price scarcely, *per se,* reflects the market.   In the instant case Mr. Elliott had been the tenant in occupancy of the property.   Miss Locke's father had recently died, and she was anxious to dispose of the property and made overtures to

Mr. Elliott with respect to a sale. Elliott's stated position was that he was not interested and preferred not to purchase. Nevertheless Miss Locke, a few weeks later, again solicited Elliott, informed him that she would consider his then occupancy as a factor in fixing the price and came to a conclusion with him at the figure mentioned above. It does not appear that the property was generally on the market or that other solicitation had been made. It is doubtful, therefore, whether Elliott was a willing purchaser in the complete sense of that term as used as a basis for tax assessments.

There is at the outset a presumption in favor of the *quantum* of the assessment as made by the local authority, and the onus of proving an excessive valuation is upon the landowner. *New Jersey Bell Telephone Co.* v. *City of Newark*, 118 *N. J. L.* 490; *affirmed*, 124 *Id.* 451. It is clear from the testimony that the assessment as fixed by the assessor is not out of line with the neighborhood properties, and while it is our duty to revise an excessive valuation, a lowering of an assessed valuation should not be casually made on unsatisfying proof, particularly where that change will serve to unbalance the assessments of an entire neighborhood. It was testified by William G. McDowell, a real estate expert produced by the municipality, that the land value was $8,123; that the reproduction cost of the residence was $19,795, from which the witness deducted forty per centum for depreciation and twenty-five per centum because of general economic conditions, leaving the depreciated value on the residence $6,928, which, with the depreciated value of $216 for a two-car garage, made the total depreciated value of improvements $7,144. The sum of these appraisals gave the whole property a value of $15,267. Respondent argues that that matter is not properly in evidence. We consider that it is. The commissioner who, on behalf of the State Board of Tax Appeals, heard the testimony, vigorously urged the parties to compress their testimony and suggested, when Mr. McDowell undertook to testify, that the witness' prepared appraisal be used and that the attorney of the owner cross-examine upon it as upon testimony. The owner's attorney, making no objection, followed that course. On the taking of depositions following the issuing of the writ

of *certiorari,* the report was formally offered in evidence and marked as an exhibit.

It appears that a nearby property has, since the making of the litigated assessment, been marred and disfigured, but that mutilation, even though it affects present neighborhood values, has no bearing upon the issue herein.

We conclude that the valuation fixed by the County Board should stand, namely, land $8,500, improvements $5,000, total $13,500.

The judgment of the State Board will, therefore, be reversed, but without costs.